IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>$76,273.00 in U.S. Currency,<br><br>                    Defendant *in Rem*. | No. 3:24-CV- |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America alleges this *in rem* complaint for forfeiture against $76,273.00 in U.S. Currency ("Defendant Property"):

### NATURE OF THE ACTION

1.      This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).  The United States seeks the forfeiture of the Defendant Property, under 21 U.S.C. § 881(a)(6), because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846.  The Defendant Property also is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) because it was property that constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), and *in rem* jurisdiction is proper under 28 U.S.C. § 1355(b).

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b) because acts or omissions giving rise to the forfeiture occurred in the Northern District of Texas and a substantial part of the events giving rise to the forfeiture occurred in the Northern District of Texas.

## PARTIES

4. The Plaintiff is the United States of America.

5. The Defendant Property is $76,273.00 in U.S. Currency. The Defendant Property was seized from Khachik Gezvkarayan at DFW Airport, Texas, on May 10, 2024. On May 13, 2024, the Defendant Property was deposited into a Loomis bank account in Dallas, Texas.

6. Khachik Gezvkarayan, by and through his attorney Vartan Gezvkarayan, filed a claim to the Defendant Property in the U.S. Customs and Border Protection's administrative forfeiture proceeding against the Defendant Property on June 17, 2024.

## FACTS

7. The primary responsibility of HSI is to identify, investigate, and prevent criminal activity. HSI conducts federal criminal investigations into the illegal movement of people, goods, money, contraband, weapons, and sensitive technology into, out of, and through the United States. HSI's investigations are wide ranging to include drug and

weapons smuggling, cyber and financial crime, illegal technology exports, and intellectual property crime.

8. Investigators and special agents with HSI are specially trained and learn by experience how to identify, investigate, and prevent criminal activity.

9. On May 10, 2024, a special agent and a task force officer with HSI responded to a duty call concerning a possible human trafficking incident involving two passengers arriving on an American Airlines flight at DFW Airport, Terminal A, Gate A35.

10. The two travelers were flying from Columbia, South Carolina, to Los Angeles, California, with their connection at DFW Airport.

11. After some investigation, the officers determined the human trafficking allegation lacked merit.

12. One of the officers spoke with the female passenger identified as Paula Sophia Garcia Espino, and the other officer spoke with the male passenger identified as Khachik Gezvkarayan.

13. Garcia Espino told the officer that she was traveling with Gezvkarayan to help him conceal U.S. currency to avoid detection and prevent delays during travel.

14. Garcia Espino knew Gezvkarayan from individuals with whom she previously worked at multiple marijuana dispensaries in California.

15. Garcia Espino also told the officer that Gezvkarayan buys and sells marijuana in California and other states.

16. Garcia Espino informed the officer that she did not feel she was in danger and was not being forced into anything.

17. Gezvkarayan told the other officer that Garcia Espino was just a friend and that he had flown her out to South Carolina to keep him company on a business trip.

18. Gezvkarayan explained that he had been in South Carolina to look at properties to purchase and then use as rental properties.

19. However, Gezvkarayan was unable to show any documentation or anything else supporting his assertion about properties.

20. Gezvkarayan explained that he had been in South Carolina for two days, and he denied possessing weapons or illegal drugs, but he acknowledged that he had a large amount of U.S. currency.

21. When the officer asked the amount of the U.S. currency, Gezvkarayan said that he had approximately $30,000.00.

22. Thereafter, Gezvkarayan consented to a search of his carryon and checked luggage.

23. During the search of Gezvkarayan's carryon bag, officers found bundles of U.S. currency wrapped with paper bands that were imprinted with what appeared to be the amount of money contained in each bundle.

24. During the search of Gezvkarayan's checked luggage, officers found additional bundles of U.S. currency similarly wrapped with paper bands that were imprinted with what appeared to be the amount of money contained in each bundle.

25. The U.S. currency found inside the checked luggage was concealed in various clothing items such as inside pants pockets and wrapped inside pants legs.

26. The bands that kept the currency together in bundles were not consistent with those typically used by banks.

27. Officers observed that an odor of marijuana was coming from the U.S. currency.

28. From their experience, the officers believed that the money was more than $30,000.00, and when Gezvkarayan was confronted about this, he explained that there was between $60,000.00 and $65,000.00.

29. Gezvkarayan then gave inconsistent statements regarding the money. He first explained that he had withdrawn the money from a bank.

30. When the officer explained that the bands around the bundles of money were not from a bank, Gezvkarayan then asserted that the money was from his tenants, and his tenants pay their rent in cash.

31. The officer asked Gezvkarayan why he currently was carrying the money, to which he replied that he was going to use the cash to purchase any properties in South Carolina, but he had not purchased any property.

32. The officer saw that Gezvkarayan had two iPhones and asked why he had two phones.

33. Gezvkarayan explained that one phone was for personal use and the other was for his rental property business.

34. When the officer asked if either phone contained evidence of criminal activity, Gezvkarayan shrugged his shoulders with a smile and said he was not sure.

35. Gezvkarayan consented to a search of the two iPhones in his possession.

36. During his search of the phones, the officer observed several photographs depicting large amounts of U.S. currency and bulk marijuana as well as text messages referencing the purchase and sale of narcotics. Some of these photographs from Gezvkarayan's phone are depicted here:






37. When asked about the photographs and text messages, Gezvkarayan asserted that he was just curious about prices but did not intend to buy anything.

38. The officer asked for the phone number of the two phones, and Gezvkarayan provided the number for the personal phone but said he did not know the other phone number for the business phone.

39. When the officer asked him how he did not know his business phone number, Gezvkarayan smiled and said it was a prepaid phone.

40. The officers placed the U.S. currency found in Gezvkarayan's bags under a supply cart on the jet bridge out of plain view, and a trained narcotics canine was brought to the area.

41. The narcotics canine sniffed the area and positively alerted to the presence of narcotics where the money was concealed.

42. Thereafter, the officers seized the money as being derived from narcotics activity, and they also seized the phones.

43. The U.S. currency was taken to a Loomis Bank in Dallas for an official count and deposit.

44. The money seized from Gezvkarayan totaled $76,273.00.  In the undersigned law enforcement officer's experience, possession of such a large amount of currency is not typical of legitimate airport travelers.

### FIRST CAUSE OF ACTION
### 21 U.S.C. § 881(a)(6)
### (forfeiture of property related to drug trafficking)

45. The United States of America reasserts all allegations previously made.

46. Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 *et seq.* are subject to forfeiture.

47. Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An attempt or conspiracy to do the same also is prohibited by 21 U.S.C. § 846.

48. As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. This property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CAUSE OF ACTION
### 18 U.S.C. § 981(a)(1)(C)
**(forfeiture related to violation of the Travel Act)**

49. The United States of America reasserts all allegations previously made.

50. Under 18 U.S.C. § 981(a)(1)(C), any property that constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States of America.

51. Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a "specified unlawful activity."

52. 18 U.S.C. § 1952(a) prohibits, among other things, any individual who uses "any facility in interstate or foreign commerce, with intent to–"

> (1) distribute the proceeds of any unlawful activity; or
>
> . . .
>
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity

from thereafter performing or attempting to perform an act described in subparagraph (1) or (3) above.

53. 18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

54. As set forth above, the Defendant Property is property that constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952. This property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C).

## REQUEST FOR RELIEF

WHEREFORE, the United States of America respectfully asserts that the Defendant Property is forfeitable to the United States of America under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States of America further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property;

B. That Notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

C. That a Judgment of Forfeiture be decreed against the Defendant Property;

D. That, upon the issuance of a Judgment of Forfeiture, the United States Marshals Service or its delegate be able to dispose of the Defendant Property according to law; and

E. That the United States of America receives its costs of court and all further relief to which it is entitled.

DATED this 16th day of September 2024.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

  */s/ John Penn*
JOHN PENN
Assistant United States Attorney
Indiana Bar No. 28722-29
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone: 214-659-8600
Facsimile: 214-659-8805
Email: john.penn@usdoj.gov
ATTORNEY FOR PLAINTIFF

## VERIFICATION

I am a Task Force Officer with Homeland Security Investigations ("HSI"). As a Task Force Officer with HSI, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Verified Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained therein are true and correct to the best of my knowledge and belief.

Executed this 15th day of September 2024.

*Jeremy Vandygriff*
Task Force Officer Jeremy Vandygriff
Homeland Security Investigations